IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| MONTREAL PERRY, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | 1:22-CV-872 |
| JOHN R. GUILL, JR., | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, Chief District Judge.

The plaintiff, Montreal Perry, filed this 42 U.S.C. § 1983 action against the defendant, former Person County Sheriff's Detention Officer John Guill. Mr. Perry alleges that Officer Guill used excessive force in violation of the Eighth Amendment when he pushed and tased Mr. Perry, injuring Mr. Perry's thigh and thumb. Officer Guill now moves for summary judgment. Because there are genuine issues of material fact, the motion will be denied.

### I. Facts

The facts in the light most favorable to the non-moving party, Mr. Perry, are as follows. On December 20, 2020, Mr. Perry was in custody at the Person County Detention Center serving an active sentence. Doc. 29-1 at 101, 123. The toilet in the cell where Mr. Perry was being held malfunctioned by continuing to flush. *Id.* at 48. Mr. Perry called the officer on duty through the Center's intercom system and asked for assistance to address the plumbing problem. *Id.* Officer Guill, who was attending the

Center's control desk, told Mr. Perry he would report the issue to the officer who was patrolling the area of the Center where Mr. Perry was located. *Id.*; Doc. 29-2 at ¶¶ 4–5.

After five minutes, no officer had arrived to assist, so Mr. Perry again used the intercom. Doc. 29-1 at 48. No one responded, and Mr. Perry hit the call button again. *Id.* Officer Guill then told Mr. Perry that he didn't "give a fuck" about the toilet and to stop calling. *Id.* Despite this instruction, Mr. Perry called through the intercom at least 10 times, causing a significant amount of noise in the control room; Officer Guill told Mr. Perry to stop using the intercom and called Mr. Perry a "stupid motherfucker." *Id.* at 49–50; Doc. 29-2 at ¶ 6. In response, Mr. Perry challenged Officer Guill "to bring his ass down there [to the cell]" to "say what he just said." Doc. 29-1 at 50.

Five minutes later, Officer Guill went to Mr. Perry's cell and was visibly angry. *See id.* at 51–52. He was "red in the face" with "[h]is mouth balled up, like he was mad." *Id.* Mr. Perry and Officer Guill were standing on opposite sides of the cell door looking at each other through a small window, and Officer Guill said, "[W]hat's up," meaning, as Mr. Perry perceived it, "what [are] you going to do?" *Id.* at 52, 60–61. Mr. Perry responded, "[W]hat's up. Open the door." *Id.* at 52. Officer Guill then radioed another officer in the control room, asking him to open the door remotely. *Id.* After Officer Guill asked his colleague to open the door, Mr. Perry said, "I'm going to beat [your] ass." *Id.* at 118. Mr. Perry "didn't even think the door was really going to open," and it shocked him when the door was opened. *Id.* at 62.

After the door slid open, Mr. Perry and Officer Guill were standing face to face, *id.* at 61, within arm's reach of each other, *id.* at 63, "still getting ready to go at it." *Id.* at 62.

Mr. Perry said, "[W]hat's up," and Officer Guill responded, saying "what's up," both meaning "what [are] you going to do?" *Id.* at 52, 60. Without telling Mr. Perry to step back or move, *id.* at 62, Officer Guill pushed Mr. Perry, *id.* at 52, 63, knocking Mr. Perry back a couple of steps. *Id.* at 63. Then Officer Guill pulled out a taser and shot at Mr. Perry; one taser prong hit him in his left inner thigh. *Id.* at 52, 63–64. Mr. Perry immediately pulled the prong from his thigh. *Id.* at 52, 65. He did not feel an electric shock, but removing the prong caused bleeding. *Id.* at 65.

Mr. Perry then took a couple of steps forward toward Officer Guill, and they were again standing face to face. *Id.* at 66–67. Officer Guill then attempted to touch the taser to Mr. Perry's face, *id.* at 67; Doc. 29-2 at ¶ 10, but Mr. Perry took the taser from Officer Guill; they "tussl[ed]" over possession of it. Doc. 29-1 at 68.

During this struggle, a second officer arrived and helped Officer Guill pin Mr. Perry down on the cell bed. *Id.*; Doc. 29-2 at ¶ 10. Officer Guill had Mr. Perry's right arm held down, and Mr. Perry's "thumb was stuck in the trigger spot of the taser." Doc. 29-1 at 68. Officer Guill twisted and turned the taser to remove it from Mr. Perry's hand, causing injury to the thumb. *Id.*[1] As the officers struggled with Mr. Perry to recover the taser, they did not hit, punch, or kick Mr. Perry. *Id.* at 76.

After the officers recovered the taser, a third officer, Sergeant George Tingen arrived. *Id.* at 73; Doc. 29-2 at ¶ 11. Sergeant Tingen instructed Officer Guill to pick up

---

[1] Mr. Perry's testimony is ambiguous about which officer twisted and turned the taser, but the Court must at this stage view the evidence in the light most favorable to Mr. Perry.

3

the taser and return to the control room. Doc. 29-1 at 74–75. Officer Guill complied and left the cell. *Id.* at 75.

## II. Discussion

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At summary judgment, courts "must construe all facts and reasonable inferences in the light most favorable to the nonmoving party." *Bandy v. City of Salem*, 59 F.4th 705, 709 (4th Cir. 2023).

### A. Eighth Amendment Claim

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. CONST. amend. VIII. This prohibition extends to the excessive force by prison officials against prisoners and forbids "the unnecessary and wanton infliction of pain." *Hill v. Crum*, 727 F.3d 312, 317 (4th Cir. 2013) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

To prove a constitutional violation for use of excessive force, the plaintiff must satisfy both an objective and a subjective component. *See Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019). First, the plaintiff must show that the prison official applied force "sufficiently serious to establish a cause of action;" this objective standard is "not a high bar" and requires "only something more than '*de minimis*' force." *Id.* Second, the plaintiff must show that the officer applied force "maliciously and sadistically for the very purpose of causing harm." *Id.* at 113 (quoting *Whitley*, 475 U.S. at 320–21). An

4

officer acts "maliciously and sadistically" when he "inflicts pain not to induce compliance, but to punish an inmate for intransigence or to retaliate for insubordination." *Id.* (cleaned up). This subjective prong "is a demanding standard." *Id.* at 112.

Here the parties agree that Officer Guill's use of the taser satisfies the objective component required for an excessive force claim. *See* Doc. 29 at 14; Doc. 31 at 6; *Brooks*, 924 F.3d at 112 ("Nobody disputes that deploying a taser – a weapon 'designed to cause excruciating pain' that can 'burn a subject's flesh' – is a 'serious use of force.'"). The relevant inquiry then focuses on the subjective component and whether Officer Guill used force to punish or retaliate against Mr. Perry. *See Brooks*, 924 F.3d at 113.

Here, the evidence viewed in the light most favorable to Mr. Perry supports the inference that Officer Guill went to Mr. Perry's cell and had the door opened so that he could assault and tase Mr. Perry to punish him for using the intercom to call repeatedly and for challenging Officer Guill to fight. By Mr. Perry's account, Officer Guill insulted him and used profanity over the intercom and came to his cell in response to Mr. Perry's challenge; Officer Guill was angry when he arrived; Officer Guill quickly had the door opened despite Mr. Perry's inflammatory language; and Officer Guill said nothing about the toilet, instead almost immediately pushing and then tasing Mr. Perry. *See* Doc. 29-1 at 49–52, 59–64. No party contends there was an emergency with the toilet, so there was no need for Officer Guill to use force on Mr. Perry to respond to the plumbing malfunction, and Officer Guill made no effort to temper or avoid the need for a forceful response before entering the cell. *See Williams v. Benjamin*, 77 F.3d 756, 762 (4th Cir. 1996) (citing *Whitley*, 475 U.S. at 321 and identifying factors appropriate for

5

consideration in determining whether to infer an officer acted maliciously and sadistically).

Courts afford officers "wide-ranging deference in their determinations that force is required to induce compliance with policies important to institutional security." *Brooks*, 924 F.3d at 113 (internal quotation marks omitted). But when officers use force for the "very purpose of causing harm," to punish or retaliate, they "cross the line into an impermissible motive." *Id.* (internal quotation marks omitted).

As the defendant points out in the briefing, there are significant factual disputes over what happened that day. *See* Doc. 29 at 9–10. By Officer Guill's account, Mr. Perry was repeatedly demanding an immediate solution to the noisy toilet and was cursing but said nothing threatening. Doc. 29-2 at ¶ 6. Officer Guill also says he went to the cell "for the sole purpose of resolving the problem with [Mr. Perry's] toilet" and "in order to achieve peace," *id.* at ¶ 7, and that when he arrived at the cell, he told Mr. Perry he "was there to deal with the problem with his toilet." *Id.* at ¶ 8. Officer Guill states that Mr. Perry initially did not threaten him but did so immediately after Officer Guill asked that the cell door be opened and that before Officer Guill had time to cancel the request to open the doors, the doors opened and Mr. Perry assaulted him. *Id.* at ¶ 9. If this is so, then there was no constitutional violation. But the material facts are disputed, so the jury will have to resolve the conflict in the evidence over whether Officer Guill "acted with a sufficiently culpable state of mind." *Brooks*, 924 F.3d at 112.

As to whether Officer Guill violated Mr. Perry's constitutional rights during the removal of the taser from Mr. Perry's hand, the evidence of a malicious motive to punish

6

or cause harm is quite a bit thinner. Arguably, it is sufficient and, in any event, what happened after other officers arrived will be generally relevant at trial. A decision in plaintiff's favor at summary judgment does not preclude evaluation of the sufficiency of the evidence as it actually is presented at trial.

The parties present conflicting accounts of why Officer Guill went to Mr. Perry's cell, what they communicated to each other there, and why Officer Guill had the cell door opened. Because this disputed evidence is material to Officer Guill's motive and whether he acted maliciously, *see id.*, the motion for summary judgment will be denied.

B.  **Qualified Immunity**

Generally, under the doctrine of qualified immunity, a corrections officer who "has violated a prisoner's constitutional right" is "shielded from liability . . . if an objectively reasonable officer could have believed that his actions were lawful in light of clearly established law." *Cox v. Quinn*, 828 F.3d 227, 238 (4th Cir. 2016) (internal quotation marks omitted). When an officer asserts immunity from an alleged violation that contains a "wrongful intent" element, such as an Eighth Amendment excessive force claim, the officer's subjective intent governs both the substantive claim and the immunity defense, and the analyses merge. *See Brooks*, 924 F.3d at 118–19 ("Because 'the case law is intent-specific,' clearly establishing that the bad faith and malicious use of force violates the Eighth Amendment rights of prison inmates, a corrections officer who acts with that culpable state of mind reasonably should know that she is violating the law.").

Like in *Brooks*, the excessive force claim here contains a "wrongful intent" element. 924 F.3d at 118. The inquiry controlling Officer Guill's claim of immunity then

7

collapses into the same analysis as the subjective intent prong of the excessive force claim. Because there is a genuine dispute over the material facts about Officer Guill's state of mind when he used force against Mr. Perry, his immunity defense will be denied.

It is **ORDERED** that the defendant's motion for summary judgment, Doc. 28, is **DENIED**.

This the 22nd day of February, 2024.

_____
UNITED STATES DISTRICT JUDGE

8

Case 1:22-cv-00872-CCE-LPA   Document 37   Filed 02/22/24   Page 8 of 8